1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9            SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11   DAVID K. KRIES, and GARY MONDESIR, on behalf of themselves and all other employees similarly situated, | Case No.:  17-cv-1464-GPC-BGS |

DAVID K. KRIES, and GARY MONDESIR, on behalf of themselves and all other employees similarly situated,

                                        Plaintiffs,

v.

CITY OF SAN DIEGO; and DOES 1 through 10, inclusive,

                                        Defendants.

Case No.:  17-cv-1464-GPC-BGS

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEY'S FEES AND COSTS**

**[ECF No. 580]**

---

CANDACE MITCHELL, et al., on behalf of themselves and all other employees similarly situated,

                                        Plaintiffs,

v.

CITY OF SAN DIEGO,

                                        Defendant.

Case No. 17-cv-2014-GPC-BGS

(Consolidated with 17-cv-1464-GPC-BGS)

1

1

2

_____

3   ALBERTO ARELLANO, MAICO                Case No. 18-cv-0229-GPC-BGS

4   ALEJO, and GARY OLLISON, on behalf      (Consolidated with 17-cv-2014-GPC-
    of themselves and all other employees
5   similarly situated,                     BGS)

6                  Plaintiffs,

7

8   vs.

9   CITY OF SAN DIEGO,

10

11                 Defendant.

12

13          Before the Court is a joint motion for attorney's fees and costs filed by Plaintiffs in

14   the consolidated actions *Kries et al. v. City of San Diego*, Case No. 17-cv-1464 ("*Kries*");

15   *Mitchell et al. v. City of San Diego*, Case No. 17-cv-2014 ("*Mitchell*"); and *Arellano et*

16   *al. v. City of San Diego*, Case No. 18-cv-0229 ("*Arellano*").  ECF No. 580.  Defendants

17   oppose.  ECF No. 588.  The motion has been fully briefed.  ECF Nos. 580, 588, 591, 595,

18   596.  For the reasons set forth below, the Court GRANTS in part and DENIES in part the

19   motion for attorney's fees and costs, and awards the *Kries* Plaintiffs $565,655.81 in

20   attorney's fees and $5,976.20 in costs, the *Mitchell* Plaintiffs $641,650.78 in attorney's

21   fees and $10,856.45 in costs, and the *Arellano* Plaintiffs $342,232.06 in attorney's fees

22   and $5,942.62 in costs.

23   **I.     Background**

24          This consolidated case involves three collective Fair Labor Standard Act ("FLSA")

25   actions filed against the City of San Diego ("City").  *Kries* Plaintiffs filed their action on

26   June 19, 2017, *Mitchell* Plaintiffs filed their action on September 29, 2017, and *Arellano*

27

28

2

Plaintiffs filed their action on January 31, 2018.  ECF No. 1; Case No. 17-cv-2014, ECF No. 1; Case No. 18-cv-0229, ECF No. 1.  Plaintiffs, employees of the City, alleged that the City failed to pay them proper overtime premiums under the FLSA, as interpreted by the Ninth Circuit in *Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016).  Specifically, Plaintiffs alleged that Plaintiffs improperly excluded from the regular rate of pay (1) payouts of unused portions of the City's flexible benefit plan ("FBP") dollars paid as cash, sometimes referred to as "cash-in-lieu" ("CIL") payments, and (2) the full value of the Plaintiffs' FBP flex dollars or credits.  Plaintiffs also alleged that the City violated the FLSA by: (1) failing to "cash out" compensatory time off accrued under FLSA using a regular rate of pay that included CIL and Full FBP Credits, and (2) using a divisor and multiplier methodology which underpaid FLSA overtime by failing to allocate FBP Credits to the regular rate earned during a standard 40-hour, non-overtime workweek.

On July 10, 2019, the Court ordered the *Kries*, *Mitchell*, and *Arellano* cases be consolidated for the purposes of discovery and cross-motions for summary judgment.  ECF No. 547.  Although the cases were consolidated, Plaintiffs elected to opt-in to their specific case and agreed to representation by the attorneys representing the Plaintiffs in that case.  On April 29, 2020, the parties jointly moved for approval of a settlement resolving the claims of all Plaintiffs who had opted-in to the *Kries*, *Mitchell*, and *Arellano* actions and had not yet settled.[1]  ECF No. 571.  The settlement agreement provided that the City will pay a total amount of no more than $6,199,997.98 to settle all of the 2,537 Plaintiffs' FBP-related FLSA claims raised in the action.  ECF No. 575 at 4.  The settlement agreement further provided that the City would pay Plaintiffs' reasonable

---

[1] In late 2017 and early 2018, 19 of the *Kries* Plaintiffs accepted settlement offers made by the City under Federal Rule of Civil Procedure 68.  ECF Nos. 120, 121, 127, 128, 129, 130.  The Court has already awarded attorney's fees for the 67.3 hours of work reasonably expended to achieve the settlement as to those 19 Plaintiffs.  ECF No. 147.  *Kries* Plaintiffs do not seek compensation for work already recovered in the previous fee motion related to those 19 Plaintiffs in the instant motion.

attorney's fees and costs as determined by the Court. *Id.* at 13.  On July 2, 2020, the Court approved the settlement. *Id*.  On August 17, 2020, the Court approved a settlement concerning the claims of a group of 35 lifeguards who inadvertently had not been mailed notices about the *Mitchell* action after the Court's conditional certification of the action. ECF No. 579.

The Court directed the parties to file a motion for attorney's fees and costs on or before October 16, 2020.  ECF No. 575.  On October 16, 2020 the *Kries*, *Mitchell*, and *Arellano* Plaintiffs filed the present motion, seeking a total of $1,691,987.50 in attorney's fees and $22,775.27 in costs.  ECF No. 580.  On December 7, 2020, the City filed an opposition to the Plaintiffs' calculation of attorney's fees, arguing that Plaintiffs are entitled to only $1,210,268.00 at most, and did not oppose the costs Plaintiffs seek to recover.  ECF No. 588.  On December 11, 2020, Plaintiffs filed a reply along with an objection to the declaration of Jacqueline S. Vinaccia filed by the City in support of its opposition, and sought an additional $70,220.00 in attorney's fees for work on the reply, objection to evidence, and the anticipated hearing on attorney's fees.  ECF Nos. 591, 591-1.  The Court granted leave for the City to file a sur-reply and a response to the evidentiary objection, both of which the City filed on January 8, 2021.  ECF Nos. 595, 596.

## II.    Legal Standard

The FLSA provides that in an action asserting failure to pay proper overtime, the Court shall "in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  A court addressing such a fee motion begins with a "lodestar" calculation,

which entails multiplying the hours reasonably expended by a reasonable hourly fee.[2] *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160 (9th Cir. 2018).  In determining the reasonable hourly rate to use in the lodestar calculation, a district court must look to the "prevailing market rates in the relevant community," which is generally "the forum in which the district court sits," "for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205–06 (9th Cir. 2013) (quoting *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir.2010); *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)) (internal quotation marks omitted); *see also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The party seeking the fee has the burden to produce satisfactory evidence that the requested rate is warranted under this standard.  *Gonzalez*, 729 F.3d at 1206. Additionally, the party seeking the fee has the burden of proving that the proposed number of hours to use in the lodestar calculation is reasonable.  *Id.* at 1202.  Hours should not be counted if they are excessive, redundant, or otherwise unnecessary. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

"Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it."  *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001).  Before applying any such adjustment, the Court must be sure that it is not doing so based on a consideration that was already incorporated into the lodestar amount.  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010).

\ \ \

---

[2] Fee requests under the FLSA are governed by the same legal standards that apply to fee requests under all statutorily-authorized fee provisions, such as 42 U.S.C. § 1988.  *Hensley v. Eckerhart*, 461 U.S. 424, 432 n.7 (1983) ("The standards set forth in this opinion [which address fees requests under § 1988] are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'").

1  **III.  Discussion**

2      **A. Evidentiary Objections**

3      The Court first turns to Plaintiffs' evidentiary objections to the declaration of

4  Jacqueline S. Vinaccia, ECF No. 588-2 ("Vinaccia Decl."), relied on by the City to

5  support its lodestar calculation.  Plaintiffs argue that the Court should find the Vinaccia

6  Declaration's opinions regarding hourly rates and compensable hours inadmissible under

7  Federal Rule of Evidence 702 because they lack foundation or are not supported by

8  underlying evidence.

9      Declarations of other attorneys may serve as evidence supporting or opposing the

10 elements of the lodestar calculation proposed by the party seeking attorney's fees.  *See*

11 *Camacho*, 523 F.3d at 980 (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*,

12 896 F.2d 403, 407 (9th Cir. 1990)) ("[A]ffidavits of the plaintiffs' attorney[s] and other

13 attorneys regarding prevailing fees in the community, and rate determinations in other

14 cases . . . are satisfactory evidence of the prevailing market rate.").  Likewise, the

15 opinions of attorney's fee experts and auditors are regularly considered by district courts.

16 *E.g.*, *Hall v. City of Fairfield*, No. 2:10-CV-0508 DAD, 2014 WL 1286001, at *7 (E.D.

17 Cal. Mar. 31, 2014); *Garcia v. Resurgent Capital Servs.*, L.P., No. C-11-1253 EMC,

18 2012 WL 3778852, at *2 (N.D. Cal. Aug. 30, 2012).

19     Ms. Vinaccia explains her experience analyzing attorney's fees in various cases,

20 authoring publications and presenting on the subject of appropriate billing, litigating

21 labor and employment claims, as well as her use of the rates listed in the Wolters

22 Kluwer's Real Rate Report.  Vinaccia Decl. ¶¶ 28, 31, 33; ECF No. 588-3; ECF No. 595-

23 2 ("Suppl. Vinaccia Decl.") ¶¶ 2, 3.  The Court finds that Ms. Vinaccia's declaration lays

24 a foundation for her opinion on the reasonable hourly fees and the reasonable hours

25 expended in this case by virtue of her general background in legal fee analysis in San

26 Diego as well as her review of the documents filed in support of Plaintiffs' motion and

27

28

the Real Rate Report, even if she herself has not litigated FLSA cases. The Court also finds that Ms. Vinaccia's opinions are based on sufficient evidence, including the billing entries and declarations provided by Plaintiffs' counsel and discussions with the City Attorney's Office, to render the declaration admissible, even if the parties disagree as to the import of such evidence. Vinaccia Decl. ¶¶ 7, 8; Suppl. Vinnccia Decl. ¶¶ 5, 6. Overall, under the flexible standard set out by Federal Rule of Evidence 702, the Court finds Ms. Vinaccia's declaration is helpful to the Court in determining reasonable attorney's fees and is reliably based on sufficient facts and data, even as the Court recognizes that Ms. Vinaccia may be unable to opine on certain particularities of FLSA practice. Fed. R. Evid. 702; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 594 (1993). Ms. Vinaccia's declaration does not, for the most part, stray beyond her general expertise relating to San Diego market rates and appropriate billing.[3] The cases cited by Plaintiffs are therefore distinguishable. *See Rodriguez v. Cty. of Los Angeles*, 96 F. Supp. 3d 1012, 1027 (C.D. Cal. 2014), *aff'd*, 891 F.3d 776 (9th Cir. 2018) (finding expert, who had no experience in civil rights litigation or the PLRA, qualified to opine on attorney's fees generally but not on attorney's fees in the civil rights context); *Johnson v. Progreso Dev., LLC*, No. 5:20-CV-02167-EJD, 2020 WL 6136093, at *3 (N.D. Cal. Oct. 19, 2020) (rejecting attorney's fee declaration that consisted mostly of review of case law as improper legal argument). Ms. Vinaccia's background may affect the weight that the Court gives to her expert opinion, but it does not serve as grounds to reject the declaration altogether. *See Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998) ("*Daubert* does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the

---

[3] The Court does not find paragraph 43, which discusses the *Flores* case, to be a proper subject for expert opinion, particularly give Ms. Vinaccia's lack of background in FLSA cases, and therefore does not consider this portion of the declaration. Vinaccia Decl. ¶¶ 43, 44.

situation is correct" as a prerequisite for admission of evidence).

Accordingly, the Court overrules Plaintiffs' objections to the Vinaccia Declaration.[4]  To the extent any part of the declaration verges on improper legal argument, the Court does not consider it.  *Cf. Lauderdale v. City of Long Beach*, No. CV 08-979 ABC (JWJX), 2010 WL 11570514, at *5 (C.D. Cal. Jan. 11, 2010) (admitting attorney's fees expert's declaration for permissible purposes only).

### B. Lodestar Calculation

The City contests both the hourly rate and number of hours used for the lodestar calculation proposed by the Plaintiffs.  The Court will accordingly consider both elements of the lodestar in turn.

### i. Reasonable Hourly Rate

Plaintiffs propose the following hourly rates for the attorneys, paralegal, and law clerks who performed work on the three cases:

| Case | Name | Experience | Hourly rate (by year) | |
|------|------|-----------|------|------|
| *Kries* | Michael Conger | 30+ years | $600 | 2017–2018 |
| | | | $650 | 2019–2020 |
| *Kries* | Patti Messner (paralegal) | 28 years | $95 | |
| *Mitchell* | Ann Smith | 30+ years | $600 | 2017–2018 |
| | | | $650 | 2019–2020 |
| *Mitchell* | Dyland Griffith | 3 years | $175 | 2017 (law clerk) |
| | | | $275 | 2017–2018 |
| | | | $350 | 2019–2020 |
| *Arellano* | Eli Naduris-Weissman | 14 years | $500 | |

---

[4] Plaintiffs also object to paragraph 39 the declaration of Alison P. Adema, ECF No. 588-1 ("Adema Decl.), regarding the City's prior litigation in *Pappas v. City of San Diego*, Case No. 37-2017-00033953-CU-OE-CTL (Cal. Super. Ct. San Diego Cty.), on the grounds that Ms. Adema lacks personal knowledge of the *Pappas* litigation.  The City appears to concede that Ms. Adema, who was not involved in the *Pappas* litigation, ECF No. 595 at 8, did not have personal knowledge of the City's position on Mr. Conger's claimed rate in that litigation.  The Court therefore sustains Plaintiffs' objection to this paragraph and will not consider the statement in Ms. Adema's initial declaration that the City did not take a position on Mr. Conger's rate in the *Pappas* case.

| *Arellano* | Hannah Weinstein | 6 years | $400 |
| *Arellano* | Juhyung Harold Lee | 4 years | $350 |
| *Arellano* | Law clerks | N/A | $150 |

The City opposes the hourly rate sought for Plaintiffs' attorneys, but does not oppose the hourly rate sought for law clerks or the paralegal.

Plaintiffs contend that the hourly rates sought by its attorneys are reasonable based on the fees they regularly charge and on fees awarded to them and similarly experienced lawyers in other cases in the Southern District of California, particularly given the breakdown of the work between the attorneys and the case's novelty and outcome.[5] Plaintiffs also argue the rates are reasonable because they are consistent with the *Laffey* Matrix, a "well-established source for rates in the District of Columbia," *Ramirez v. Escondido Unified Sch. Dist.*, Cas No. 11-cv-1823, 2014 WL 12675859, at *2–3 (S.D. Cal. April 17, 2014), and with the common fund framework, even though this is not a common fund case.[6]  The City argues that the cases relied upon by Plaintiffs do not demonstrate that Plaintiffs' requested rates are reasonable because they involved uncontested motions and fees for attorneys' services that are not comparable to the instant case. The City also contends that Plaintiffs' arguments regarding the *Laffey* Matrix and common fund cases are irrelevant and should be disregarded, and that the

---

[5] Plaintiffs include the declarations of several employment attorneys as attachments to their reply brief. ECF Nos. 591-13, 591-14, 591-22.  The Court shares the City's concern that these declarations were not included with Plaintiffs' initial fee motion, and in any case finds them of little additional help given the lack of detail included in the declarations.  At most, the declaration of Benjamin C. Bunn is helpful to establish that another highly experienced employment attorney in San Diego charges a rate of $750 per hour.  ECF No. 591-14 ¶ 5.

[6] Plaintiffs also contend that the City has conceded or is estopped from arguing against the reasonableness of Plaintiffs' requested rates.  *See, e.g.*, ECF No. 580-2 ("Conger Decl.") ¶ 10; ECF No. 591-2 ("Conger Reply Decl.") ¶ 8.  As Plaintiffs have not attempted to explain how the City's prior statements meet the requirements of judicial estoppel, *see New Hampshire v. Maine*, 532 U.S. 742, 750 (2001), the Court rejects Plaintiffs' contention that the City is bound by positions it has taken in the past.

9

1  Court should consider Wolters Kluwer's Real Rate Report ("Real Rate Report") and Ms.
2  Vinaccia's analysis to determine reasonable rates.

3  "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition
4  to the attorney's own affidavits—that the requested rates are in line with those prevailing
5  in the community for similar services by lawyers of reasonably comparable skill,
6  experience and reputation." *Camacho*, 523 F.3d at 980 (quoting *Blum*, 465 U.S. at 895 n.
7  11). The opposing party can then meet its burden of rebuttal by "submission of evidence
8  to the district court challenging the accuracy and reasonableness of the . . . facts asserted
9  by the [moving] party in its submitted affidavits." *Id.* (quoting *Gates v. Deukmejian*, 987
10  F.2d 1392, 1398 (9th Cir. 1992)).

11  Neither party contests that San Diego, the location of the forum, is the relevant
12  community. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).
13  The *Laffey* Matrix, cited by Plaintiffs in a footnote, is therefore entitled to limited weight,
14  if any, as it reflects market rates for attorneys in the Washington, D.C. area. *See Prison*
15  *Legal News*, 608 F.3d at 454 ("[J]ust because the *Laffey* matrix has been accepted in the
16  District of Columbia does not mean that it is a sound basis for determining rates
17  elsewhere, let alone in a legal market 3,000 miles away.").

18  Plaintiffs cite a number of cases in support of the requested rates.[7] Of these cases,
19  several awarded fees for "similar services by lawyers of reasonably comparable skill,
20  experience and reputation" to the more senior attorneys who participated in this case.
21  *Gonzalez*, 729 F.3d at 1205–06 (quoting *Prison Legal News*, 608 F.3d at 454. In *Vasquez*

---

[7] Plaintiffs cite the prior order of this Court awarding *Kries* Plaintiffs attorney's fees for Mr. Conger's work related to the 19 then-settling Plaintiffs. ECF No. 147. Although the Court did calculate the lodestar based on the rate offered by the Plaintiffs, it recognized in that order that the City did not intend to waive future opposition to Plaintiffs' fee requests. The Court will therefore consider the City's opposition to Mr. Conger's rates despite its previous order, as it did not then have the benefit of the parties' briefing on the reasonableness of Mr. Conger's rates.

*v. Kraft Heinz Foods Co.*, a class action alleging, *inter alia*, claims under California labor law for underpaid hourly and overtime wages that resulted in settlement, the Court found the rates requested by counsel reasonable and awarded attorney's fees based on the common fund approach, resulting in an award lower than the lodestar calculation. *Vasquez v. Kraft Heinz Foods Co.*, No. 3:16-CV-2749-WQH-BLM, 2020 WL 1550234, at *1–2, 7 (S.D. Cal. Apr. 1, 2020). Like this consolidated FLSA collective action, plaintiffs' attorneys in *Vasquez* also negotiated a settlement in the consolidated class action prior to summary judgment or trial. *Id.* at *1–2. Attorneys in *Vasquez* requested rates similar to, or greater than, attorneys with comparable experience and reputations to the attorneys in this case. For instance, the Court found reasonable the requested hourly rates of $725 for Diana M. Khoury, a lawyer practicing for 33 years with significant experience negotiating wage and hour class action settlements, and $700 for Sahag Majarian II, a lawyer practicing for 29 years who served as co-counsel for plaintiffs in 50 or more wage and hour class actions. Case No. 3:16-CV-2749-WQH-BLM, ECF Nos. 111-3, 111-4. Here, Mr. Conger and Ms. Smith each have at least 30 years of experience, have received accolades over the years, and have served as counsel in dozens of certified class actions and other cases representing employees, and request rates between $600 and $650 per hour. ECF No. 580-2 ("Conger Decl.") ¶¶ 3–5, 6–8; ECF No. 580-9 ("Smith Decl.") ¶ 5. The Court in *Vasquez* also found reasonable an hourly rate of $550 for Marta Manus, an attorney with 12 years of experience and an employment law background, experience comparable to Mr. Naduris-Weissman, who has 14 years of experience mostly in the labor and employment law field and seeks an hourly fee of $500.[8] ECF No. 580-16

---

[8] An attorney with 28 years of experience and some employment law background also requested a rate of $550 per hour. Case No. 3:16-CV-2749-WQH-BLM, ECF Nos. 111-3. The *Vasquez* court also found reasonable rates of $650 for an attorney with 13 years of experience, $550 for attorneys with 10 years of experience, $400 for attorneys with 4 years of experience, and $325 for an attorney with 2 years of experience. *Vasquez*, 2020 WL 1550234, at *7. Because the declarations filed in *Vasquez* did not

("Naduris-Weissman Decl.") ¶¶ 2, 6; Case No. 3:16-CV-2749-WQH-BLM, ECF Nos. 111-3.  Another class action alleging claims for failure to pay overtime wages under California law, *Lopez v. Mgmt. & Training Corp.*, also provides support for some of Plaintiffs' requested hourly rates.  *Lopez v. Mgmt. & Training Corp.*, No. 17CV1624 JM(RBM), 2020 WL 1911571, at *1 (S.D. Cal. Apr. 20, 2020).  That case, resulting in settlement while "in its relative infancy," was litigated by attorneys with comparable experience, and although the court noted it "need not engage in a full-blown lodestar analysis" given that it applied the common fund approach, it found that the attorneys' rates were reasonable.  *Id.* at *8–9 (approving of rates including $500 for an associate with nine years of experience and $725/$875 for attorneys with over thirty years of experience).

In *Murphy v. City of El Cajon*, also an FLSA case resulting in settlement, the court performed the lodestar calculation as a cross-check on the percentage award of the common fund and found Mr. Conger's $650 rate to be "appropriate given plaintiffs' counsel's experience litigating wage and hour and employment matters."  *Murphy v. City of El Cajon*, No. 18CV0698 JM(NLS), 2019 WL 3936143, at *7 (S.D. Cal. Aug. 19, 2019); *see also* ECF No. 580-4 (Minute Ord. in *Pappas v. City of San Diego*, Case No. 37-2017-00033953-CU-OE-CTL (Cal. Super. Ct. San Diego Cty.)) (calculating lodestar based on $650 hourly rate for Mr. Conger;[9] *Roberts v. City of Chula Vista*, No. 16CV1955-MMA (DHB), 2017 WL 6541105, at *7 (S.D. Cal. Dec. 21, 2017) (in FLSA

---

provide detailed information about these attorneys' backgrounds, it is more difficult to determine whether they had comparable skills and reputation to the attorneys in this case, though the Court notes that attorneys in this case with similar years of experience have generally requested lower rates than those found reasonable in *Vasquez*.

[9] Although the Court recognizes that the City maintained to the Superior Court that the $650 rate was reasonable in *Pappas*, ECF No. 591-4, the Court does not agree with Plaintiffs that this "concession" necessarily requires the City to take the same position in this separate litigation.

17-cv-1464-GPC-BGS

case resulting in settlement, finding reasonable $500 hourly rate for attorney with 13 years of experience representing public safety employees); *Moreno v. Beacon Roofing Supply, Inc.*, No. 19CV185-GPC(LL), 2020 WL 3960481, at *8 (S.D. Cal. July 13, 2020) (in wage and hour putative class action resulting in settlement, applying lodestar calculation and finding reasonable an hourly rate of $742 for attorney with 18 years of experience in complex class actions and $455 for attorney with 8 years of experience in labor and employment litigation).  Several of the cases cited by Plaintiffs, while awarding fees based upon similar hourly rates for similarly experienced attorneys, were not FLSA or employment law cases.  *See Lobaton v. City of San Diego*, No. 3:15-CV-1416-GPC-DHB, 2017 WL 3622248, at *1 (S.D. Cal. Aug. 22, 2017) (civil rights lawsuit); *Makaeff v. Trump Univ., LLC*, No. 10CV0940 GPC WVG, 2015 WL 1579000, at *1, 4–5 (S.D. Cal. Apr. 9, 2015) (granting attorney's fees for plaintiff prevailing on "complex and lengthy" anti-SLAPP motion to strike defamation counterclaim).  It is therefore less clear that the attorneys in those cases provided similar services to counsel in this FLSA case, making the rates less comparable than the other cases cited by Plaintiffs.

The City contends that the cases cited by Plaintiffs are not comparable because many of them were not contested or applied the lodestar analysis only as a cross-check of the percentage-based award under the common fund approach.  While that may be true, the Court finds that these cases, along with the declarations filed in support of Plaintiffs' motion, present satisfactory evidence of the market rates for attorneys with similar background and experience to Mr. Conger, Ms. Smith, and Mr. Naduris-Weissman.  "[C]ourts are required to evaluate the reasonableness of counsel's fees, regardless of a challenge by opposing counsel."  *Rutti v. Lojack Corp.*, No. SACV 06-350 DOC JCX, 2012 WL 3151077, at *11 (C.D. Cal. July 31, 2012).  Further, common fund cases are useful to the extent the court actually determines that the rates of counsel were reasonable while performing the lodestar cross-check.  Although courts "need not closely scrutinize

each claimed attorney-hour" when conducting the cross-check, *see Lopez*, 2020 WL 1911571, at *9, there is no reason to presume that courts disregard the requirement that the lodestar calculation be based on a reasonable hourly rate.  That being said, the rates approved of in these other cases are not dispositive, and the Court must consider the City's rebuttal evidence.  Additionally, the comparable cases cited by Plaintiffs for the most part involved attorneys with almost a decade or more of experience.  Of the cases presented in Plaintiffs' motion, only in *Vasquez* did the court consider rates for more junior attorneys, and it is not entirely clear that they are similarly situated to the attorneys here, as their backgrounds were not detailed in the declarations available in that case.  *See Vasquez*, 2020 WL 1550234, at *7 (finding reasonable hourly rates of $400 for attorneys with 4 years of experience and $325 for an attorney with 2 years of experience).  While the Court will take into account the rates determined by *Vasquez* and Plaintiffs' own declarations, it notes that Plaintiffs have provided less evidence to support the requested rates of Mr. Griffith, Ms. Weinstein, and Mr. Lee than those of the more senior attorneys.

The Court accordingly turns to the City's rebuttal evidence.  The City mainly relies on the Vinaccia Declaration and its interpretation of the Real Rate Report.  The Real Rate Report, an analysis of law firm rates based on invoice data published by Wolters Kluwer that breaks down rates by location, experience, firm size, practice area, industry, and role, has been cited with approval by courts inside and outside this district.[10]  *See Aispuro v. Ford Motor Co.*, No. 18-CV-2045 DMS (KSC), 2020 WL 4582677, at *4 (S.D. Cal. Aug. 10, 2020) (collecting cases); *Eclipse Grp. LLP v. Target Corp.*, No. 15-CV-1411 JLS (BLM), 2020 WL 5709488, at *4 (S.D. Cal. Sept. 24, 2020); *Arias v. Ford Motor Co.*, Case No. EDCV 18-1928 PSG (SPx), 2020 WL 1940843, at *3 (C.D. Cal. Jan. 27, 2020).

---

[10] *See* Wolters Kluwer, *Real Rate Report*, https://www.wolterskluwer.com/en/solutions/enterprise-legal-management/legalview-analytics/real-rate-report.

The Vinaccia Declaration cites to the 2020 Real Rate Report and notes the median and third quartile hourly rates for partners and associates in the employment and labor practice area in San Diego, as well as the nationwide median and third quartile rates for partners and associates in the employment and labor: compensation and benefits litigation practice area.  Vinaccia Decl. ¶¶ 29–30.  Among nationwide compensation and benefits litigators, the third quartile rates for partners and associates were $660 and $345 per hour, respectively; the median rates for partners and associates were $515 and $290 per hour, respectively.  ECF No. 588-6, at 8. Among San Diego employment and labor lawyers, the third quartile rates for partners and associates were $529 and $390 per hour, respectively; the median rates for partners and associates were $397 and $295, respectively.  *Id.* at 9. However, Ms. Vinaccia does not adopt wholesale either the median or third quartile numbers from the Real Rate Report, and the declaration does not explain in detail how she arrived at her rates for each attorney.  The City generally maintains that Plaintiffs' proposed rates should be reduced because "FLSA litigation is relatively simple."  ECF No. 588 at 20.

The Real Rate Report is somewhat helpful to the Court's analysis of Plaintiffs' requested rates, particularly for Mr. Griffith, Ms. Weinstein, and Mr. Lee, whose rates Plaintiffs have not supported with significant evidence of past fee awards in comparable cases.  Ms. Vinaccia states that the market rates for both Ms. Weinstein and Mr. Lee are $295, the median rate for employment and labor associates in San Diego, Vinaccia Decl. ¶ 31, whereas Plaintiffs request $400 for Ms. Weinstein and $350 for Mr. Lee.  Ms. Weinstein has six years of experience working on labor and employment cases and was designated a Super Lawyers Rising Star.  ECF No. 580-22 ("Weinstein Decl.") ¶¶ 2–3. Mr. Lee has four years of experience, including two years as a federal and California Supreme Court judicial law clerk and two years at his current firm representing union and individual clients.  Naduris-Weissman Decl. ¶ 4.  As for Mr. Griffith, Ms. Vinaccia states

that he would be entitled to a market rate of $225 for his services as an attorney, Vinaccia Decl. ¶ 31, while Plaintiffs request a rate of $275 for his work while a first-year associate and $350 for his work as a second- and third-year associate, ECF No. 580-13 ("Griffith Decl.)" ¶ 5.  Mr. Griffith began working on the case as a post-graduate law clerk and has since litigated employment and labor cases, including wage and hour and overtime claims.  *Id.* ¶ 6.

The Court agrees with Ms. Vinaccia's determination that $225 is a reasonable rate for Mr. Griffith.  Although $225 is lower than the median associate rate for San Diego labor and employment lawyers ($295), the Court finds this differential is appropriate given Mr. Griffith's experience level.[11]  Likewise, the Court finds the median associate rate for San Diego labor and employment lawyers is a reasonable rate for Mr. Lee's services in this case, as opined by Ms. Vinaccia.  Vinaccia Decl. ¶ 31.  Mr. Lee primarily worked on the case during a short period in 2018, when he had two years of experience as a judicial law clerk but less than a year of experience in the employment and labor law field, suggesting his services would not command an above-average rate.  *See* Naduris-Weissman Decl. ¶ 4; ECF No. 580-18; *cf. Blum*, 465 U.S. at 899 n.15 ("Each of respondents' counsel had admirable records as scholars, and two had valuable clerkship experience. . . Yet none of them, at the outset of this suit in December 1978, had more than 1½ years experience as practicing lawyers. As the term 'experience' normally is used, this is quite limited.") (internal citation omitted).  As for Ms. Weinstein, the Court finds that her requested rate of $400 is reasonable.  This rate is only $10 more than the third quartile rate for San Diego labor and employment associates, and Ms. Weinstein's

---

[11] Ms. Vinaccia also states that higher rates for Mr. Griffith are not appropriate because the tasks he undertook are not properly billed to a client.  Vinaccia Decl. ¶ 32.  The Court finds this contention is better addressed in its discussion of whether the hours expended by Mr. Griffith were reasonable, rather than in its evaluation of his hourly rate.

declaration demonstrates her experience and achievements in this field.  The $400 rate found reasonable for a fourth-year associate in the *Vasquez* case, though not particularly probative given the lack of details about the attorney's background, also lends support for Ms. Weinstein's $400 rate.  See *Vasquez*, 2020 WL 1550234, at *7.

Although the Court recognizes that Mr. Conger and Ms. Smith assert rates above the third quartile, and Mr. Naduris-Weissman above the median, of San Diego employment and labor partners according to the Real Rate Report, Plaintiffs have provided sufficient evidence to show that these rates are reasonable.  Most importantly, as noted above, several cases in the Southern District of California found equivalent or higher rates to be reasonable for attorneys with similar backgrounds (or, in the case of Mr. Conger, for the same attorney).  Additionally, the declarations of Mr. Conger, Ms. Smith, and Mr. Naduris-Weissman attest to counsels' particular skills and reputations for their work on similar cases.  The Court also notes that the Real Rate Report may be of less use in determining a reasonable fee for partners, whose years of experience can span a range of several decades, given that courts must determine market rates for attorneys of reasonably comparable experience.  And although the City contends that the case was straightforward, they do not cite any comparable FLSA cases that affirmed lower rates. The Court therefore finds that rates of $600 to $650 for Mr. Conger and Ms. Smith, and a rate of $500 for Mr. Naduris-Weissman, are reasonable for their services in this case.

Additionally, the City does not contest the paralegal and law clerk rates urged by Plaintiffs, and the Court finds that the rates requested are reasonable based on previous cases the Real Rate Report.  *See Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 980–81 (S.D. Cal. 2014) (finding reasonable a $150 rate for paralegals and $200 rate for law clerks); ECF No. 588-6, at 8 (listing nationwide median rates for employment and labor paralegals of at least $159).

\ \ \

Accordingly, the Court finds the reasonable rates for the services rendered in this case are as follows:

| Case | Name | Experience | Hourly rate (by year) | |
|------|------|------------|-----------------------|---|
| *Kries* | Michael Conger | 30+ years | $600 | 2017–2018 |
| | | | $650 | 2019–2020 |
| *Kries* | Patti Messner (paralegal) | 28 years | $95 | |
| *Mitchell* | Ann Smith | 30+ years | $600 | 2017–2018 |
| | | | $650 | 2019–2020 |
| *Mitchell* | Dyland Griffith | 3 years | $175 | 2017 (law clerk) |
| | | | $225 | 2017–2020 |
| *Arellano* | Eli Naduris-Weissman | 14 years | $500 | |
| *Arellano* | Hannah Weinstein | 6 years | $400 | |
| *Arellano* | Juhyung Harold Lee | 4 years | $295 | |
| *Arellano* | Law clerks | N/A | $150 | |

### ii. Hours Reasonably Expended

The City objects that the hours claimed by Plaintiffs' attorneys are not reasonable. Plaintiffs present time records indicating members of the legal team spent the following hours performing work related to the case (excluding time spent on the instant motion for attorney's fees, based on the Court's review of the timesheet entries):

| Case | Name | Hours expended (by year) | |
|------|------|--------------------------|---|
| *Kries* | Michael Conger | 421.5 | 2017–2018 |
| | | 553.2 | 2019–2020 |
| *Kries* | Patti Messner (paralegal) | 138 | |
| *Mitchell* | Ann Smith | 322.3 | 2017–2018 |
| | | 348.4 | 2019–2020 |
| *Mitchell* | Dyland Griffith | 133.6 | 2017 (law clerk) |
| | | 878.1 | 2017–2020 |
| *Arellano* | Eli Naduris-Weissman | 199.8 | |
| *Arellano* | Hannah Weinstein | 461.2 | |
| *Arellano* | Juhyung Harold Lee | 30.6 | |
| *Arellano* | Law clerks | 29.7 | |

\\\

1    The moving party bears the burden of documenting the appropriate hours spent in

2  the litigation and submitting evidence in support of the hours worked.  *Hensley*, 461 U.S.

3  at 433.  Counsel should exclude hours that are "excessive, redundant or otherwise

4  unnecessary," and the Court should decrease any hours that were not "reasonably

5  expended."  *Id.* at 434.  The opposing party must provide rebuttal in the form of

6  "submission of evidence to the district court challenging the accuracy and reasonableness

7  of the hours charged or the facts asserted by the prevailing party in its submitted

8  affidavits."  *Gates*, 987 F.2d at 1397–98 (citing *Blum*, 465 U.S. at 892 n.5); *McGrath v.*

9  *County of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995) (citations omitted) (noting that there

10  must be evidence to challenge the accuracy and reasonableness of the hours charged).

11  The party opposing fees must specifically identify defects or deficiencies in the hours

12  requested; conclusory and unsubstantiated objections are insufficient to warrant a

13  reduction in fees. *Cancio v. Fin. Credit Network, Inc.*, No. C04-03755 THE, 2005 WL

14  1629809, at *3 (N.D. Cal. July 6, 2005).

15    The district court must provide a "concise but clear" explanation of its reasons for

16  the ultimate award of attorney's fees.  *Hensley*, 461 U.S. at 437.  The district court need

17  not rule on each of defendants' specific objections, but must provide some indication of

18  how it arrived at the amount of fees to allow for meaningful appellate review.  *Gates*, 987

19  F.2d at 1398, 1400.

20    Specifically, the City contends that many of Plaintiffs' claimed hours are excessive

21  and duplicative and that Plaintiffs have claimed hours for clerical tasks and other

22  activities not properly billable to a client.[12]  The Court will address each of the City's

23

24  _____

25  [12] The City also argued in its opposition that Plaintiffs improperly included hours for work related to
Jose Silva Hernandez, a plaintiff that the City stated was excluded by stipulation of the parties.  On
26  reply, Plaintiff pointed out that the stipulation related to a different plaintiff, Jorge Perez, and filed a
copy of the alleged stipulation.  ECF No. 591-12.  The City had not addressed this issue in their sur-
27

28                                                         19

1 │ objections.

2 │                    *a. Excessive and duplicative hours*

3 │        The City contends that several categories of hours billed by Plaintiffs are excessive

4 │ or duplicative.  It alleges that Mr. Conger has billed excessive hours, particularly for

5 │ email and communication with clients; that counsel included excessive hours for research

6 │ on the methodology to be used to calculate Plaintiffs' damages; and that Plaintiffs

7 │ improperly claim hours for multiple attorneys from the same law firm attending the same

8 │ meeting or conference.

9 │        Generally, a district court "should defer to the winning lawyer's professional

10 │ judgment as to how much time he was required to spend on the case."  *Moreno v. City of*

11 │ *Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  For courts to deny compensation for a

12 │ task, "it must appear that the time claimed is obviously and convincingly excessive under

13 │ the circumstances."  *Hiken v. Dept. of Def.*, No. C 06–02812 JW, 2012 WL 3686747, at

14 │ *7 (N.D. Cal. Aug. 21, 2012).

15 │ **Mr. Conger's client communications**

16 │        The City argues that Mr. Conger and his paralegal present timesheets accounting

17 │ for a disproportionate amount of the hours worked on this consolidated case.  Further, the

18 │ City objects to vague block entries submitted by Mr. Conger for his communications with

19 │ clients.  The City also points out that Mr. Conger spent almost two thirds of his hours

20 │ communicating with the *Kries* Plaintiffs, which the City alleges is excessive and

21 │ suggestive that Mr. Conger should have assigned a portion of such tasks to his paralegal

22 │ or used more efficient communications methods, as the *Arellano* and *Mitchell* attorneys

23 │ appear to have done.  The City therefore seeks a reduction of 40% of Mr. Conger's client

24 │

25 │ ————————————————

26 │ reply.  Accordingly, the Court finds that the City has not put forth sufficient evidence to show these

27 │ hours are not reasonably included in the fee motion.

                                            20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

communication-related entries.  Plaintiffs oppose, and Mr. Conger has put forth a declaration on reply explaining the amount of time he spent on client communication and the time-saving measures he employed.

Although the Court does not find that Mr. Conger's hours should be reduced merely because of his occasional use of block billing or less specific entries, *cf. Secalt S.A. v. Wuxi Shenxi Const. Machinery Co., Ltd.*, 668 F.3d 677, 690 (9th Cir. 2012) (counsel "is not required to record in great detail how each minute of his time was expended"); *Huhmann v. FedEx Corp.*, No. 13-CV-00787-BAS NLS, 2015 WL 6127198, at *8 (S.D. Cal. Oct. 16, 2015), *aff'd sub nom. Huhmann v. Fed. Express Corp.*, 874 F.3d 1102 (9th Cir. 2017) (reducing block-billed entries by 20%), or for his decision not to delegate more client communications to his paralegal, *Moreno*, 534 F.3d at 1114, the Court finds that the hours Mr. Conger billed for communicating with clients, particularly when compared to the amount billed by the other firms in this case which represented more clients, are excessive.  Mr. Conger billed 616.5[13] hours for communications with the 487 *Kries* plaintiffs (1.27 hours per client), compared to 422.1 hours by Mr. Griffith, the attorney undertaking most of the communication with the 1,188 *Mitchell* plaintiffs (.35 hours per client) and 118.2 hours by Ms. Weinstein, the attorney undertaking most of the communication with the 897 *Arellano* plaintiffs (.13 hours per client).[14]  ECF No. 575

---

[13] Ms. Vinaccia appears to calculate this total differently by excluding the 28.2 hours she determined to be related to "the execution and e-mailing of his retention agreements."  Vinaccia Decl. ¶ 37; ECF No. 588-7.  In his declaration on reply, Mr. Conger clarified that these entries did not signify the actual emailing or processing of retention agreements and involved communication with clients about different questions.  ECF No. 591-2 ¶ 22.  The Court includes these hours in the total client communication category, and based on Mr. Conger's representation will not consider them excludable as improper clerical time.

[14] Although Plaintiffs cite to *Moreno v. City of Sacramento* for the proposition that the Court "may not set the fee based on speculation as to how other firms would have staffed the case," 534 F.3d at 1114, the Court's analysis of the number of hours reasonably expended requires consideration of how reasonable attorneys would approach a similar case.

17-cv-1464-GPC-BGS

at 4; Vinaccia Decl. ¶ 40;[15] ECF No. 588-7.  Several timesheet entries indicate Mr.
Conger at spent almost a full work day communicating with clients regarding similar
issues.  *See*, *e.g.*, ECF No. 580-5 at 4 (8/2/17 entry for "Telephone conferences with and
e-mail exchanges (58) with potential clients . . . regarding nature of case, potential
recovery, and steps necessary to join the case, submitting Consent . . . , execute retention
agreements"), 28 (12/20/18 entry for "E-mail exchange (29) with new clients re: joining
lawsuit, necessary paperwork" constituting 7.1 hours).  Individualized communication is
certainly necessary in FLSA collective actions, when each plaintiff has a separate case
and thus distinct issues regarding liability and damages, but the hours billed by Mr.
Conger suggest that adequate time-saving measures were not used.  Although attorneys
owe a duty to their clients to effectively communicate and the Court does not doubt that
Mr. Conger's communication practices were appreciated by his clients, the Court's
mandate is to determine whether the hours were reasonably expended, not whether the
time spent was in line with each attorney's regular practice.

However, the Court recognizes there is a range of client communication time that
may be reasonable in an FLSA collective action, and thus declines to reduce Mr.
Conger's client communication hours by the degree requested by the City.  Instead, the
Court will reduce Mr. Conger's client communication hours by 20%, to 493.2 hours
(from 348.3 in 2017–2018 to 278.6, and from 268.2 in 2019–2020 to 214.6).  This results
in a reasonable time of approximately an hour, on average, of communication with each
*Kries* plaintiff.  *Cf. Gates*, 987 F.2d at 1399 ("[I]n cases where a voluminous fee
application is filed in exercising its billing judgment the district court is not required to
set forth an hour-by-hour analysis of the fee request.").

---

[15] The Court has reviewed the entries referenced by Ms. Vinaccia as relating to client communication
and finds no error in her tabulation of these hours, and Plaintiffs did not object to this calculation.

17-cv-1464-GPC-BGS

**Overbilling for methodology research**

The City argues that Plaintiffs improperly include in the lodestar 108.2 hours on methodology research "despite the limited scope of available case law" on the subject and district court's decision in *Flores v. City of San Gabriel*, which the City contends rejected the position on the methodology issue that Plaintiffs took in this case. The City requests a 50% reduction in hours for this methodology research. Plaintiffs dispute this characterization of *Flores* and contend that the methodology used to calculate Plaintiffs' damages was a key issue in the case and was highly complex, and thus that the hours spent researching the methodology issue were reasonable.

The Court finds that 108.2 hours of research on the methodology issue over several years is not clearly excessive, in light of the importance of the methodology question to Plaintiffs' case and the resulting settlement. The Court therefore declines to reduce the hours billed by Plaintiffs' attorneys for research on methodology.

**Multiple attorneys for each plaintiff group attending meetings**

The City contends that Plaintiffs improperly included hours for meetings and court conferences attended by multiple attorneys for each firm, resulting in duplication of hours. The City seeks to exclude 48.5 hours for Mr. Griffith, 42.1 hours for Ms. Weinstein, and 0.6 hours for Mr. Naduris-Weissman on this basis.[16] Plaintiffs counter that the attendance of multiple attorneys per firm was necessary for some hearings and meetings, because the junior attorneys were the most familiar with the facts of the Plaintiffs' individual cases and performed the underlying legal research.

---

[16] The 0.6 hours of Mr. Naduris-Weissman's hours that the City claims is duplicative is an 8/14/2018 entry for "Develop case strategy – HW re joint stipulation to consolidate." *See* ECF No. 588-11 at 9; ECF No. 580-18 at 13. As this is not an instance in which multiple attorneys attended the same meeting or conference, it is not clear to the Court why the City considers this entry duplicative. *See* Vinaccia Decl. ¶¶ 53–54. To the extent that the City argues it is duplicative because there is another entry on 8/13/2018 with the same description for 0.4 hours, the Court disagrees, as it is not unreasonable for attorneys have multiple discussions relating to the same issue totaling only one hour.

Although courts should "examine with skepticism claims that several lawyers were needed to perform a task," they also must "exercise judgment and discretion, considering the circumstances of the individual case, to decide whether there was unnecessary duplication." *Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1286–87 (9th Cir. 2004). The attendance of multiple attorneys at a hearing or court conference may or may not be reasonable, depending on the circumstances and the explanation of the attorneys for why their attendance was necessary. *See Huhmann*, 2015 WL 6127198, at *5 ("[T]he Court declines to find that both attorneys meeting with a client or attending a court proceeding constitutes duplicative billing."); *Cruz ex rel. Cruz v. Alhambra Sch. Dist.*, 601 F. Supp. 2d 1183, 1192 (C.D. Cal. 2009) ("It is clear that Plaintiffs' counsel decided to take a 'team' approach to handling this matter. Nonetheless, that explanation is insufficient to show that it was necessary to have four attorneys attend the mediation."); *Acevedo v. City of Los Angeles*, No. CV 14-5661-GHK (PJWx), 2016 WL 11525321, at *7 (C.D. Cal. Dec. 2, 2016) ("Without more, simply pointing out that more than one . . . attorney attended certain court hearings and conferences is insufficient to warrant a reduction in the lodestar.").

The Court finds that the attendance of multiple attorneys from the same firm at court conferences was reasonable in this case. Given that the consolidated case involved thousands of plaintiffs with varying potential damages, it was not unreasonable for the attorneys more familiar with the *Mitchell* and *Arellano* plaintiffs' individual cases to be present at court conferences and meetings with opposing counsel at which settlement was discussed. Further, Mr. Griffith's attendance at depositions that he did not take is adequately explained by his timesheet entries, in which he states he was responsible for tracking deponent's responses and adjusting the outline accordingly. *See* ECF No. 580-15 at 31. However, as discussed below with respect to the City's objection to the billing of intra-office conferences, the Court finds it unreasonable for Plaintiffs' attorneys to bill

1  for multiple attorneys from the same firm attending the same internal meetings.  The

2  Court therefore will deduct 11.5 hours from Ms. Weinstein's total and 8.6 hours for Mr.

3  Griffith's total (after his admission as an attorney) for Plaintiffs' counsel meetings and

4  teleconferences that Mr. Naduris-Weissman and Ms. Smith also attended.

5                              *b. Hours for non-billable activities*

6          The City also seeks to exclude hours for activities that it contends are not billable

7  to a client or an opponent, including hours for clerical work, travel time, and office

8  conferences between attorneys at the same firm.

9  **Clerical work**

10          The City contends that Plaintiffs improperly included hours for clerical work,

11  namely through the inclusion of time spent by Ms. Messner processing and filing

12  Plaintiffs' consent paperwork and time spent by Mr. Griffith instructing his secretary on

13  filing consents, updating the list of plaintiffs represented by his law firm, updating and

14  organizing files, and performing filing work in his secretary's absence.  Plaintiffs contend

15  that these activities are not clerical work and would be billable to the client, and thus are

16  recoverable.

17          Purely clerical tasks are generally not recoverable on motion for attorney's fees as

18  they should be considered a part of the firm's overhead rather than billed to a client.  *See*

19  *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989); *Nadarajah v. Holder*, 569

20  F.3d 906, 921 (9th Cir. 2009) ("When clerical tasks are billed at hourly rates, the court

21  should reduce the hours requested to account for the billing errors."); *Butler v.*

22  *Homeservices Lending LLC*, No. 11-CV-02313-L MDD, 2014 WL 5460447, at *4 (S.D.

23  Cal. Oct. 27, 2014) ("[Plaintiff] may not bill at paralegal rates for clerical and/or

24  secretarial work.").  Non-compensable administrative tasks include filing, document

25  organization, and instructing administrative staff on how to perform clerical tasks.  *See*

26  *Davis v. City & Cty. of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992), *vacated in*

27

28

*part*, 984 F.2d 345, 345 (9th Cir. 1993); *Arizona Dream Act Coal. v. Brewer*, No. CV 12-02546-PHX-DGC, 2018 WL 6448395, at *6 (D. Ariz. Dec. 10, 2018); *Shaw v. Kelley*, 2019 WL 5102610, at *7 (N.D. Cal. Oct. 11, 2019).

Plaintiffs have included a number of hours for tasks that the Ninth Circuit and other district courts have found to be clerical in nature.  For instance, almost all of Ms. Messner's entries consist of "processing all retention agreements and Consents to Join under 216(b), file consents."  ECF No. 580-6.  Mr. Griffith claims hours for work including "instruct[ing] secretary re new ECF filings" and "organiz[ing] plaintiff consents, digital file, index contents," and "e-fil[ing] consents in legal secretary's absence, draft[ing]/fil[ing] proof of service."  *See* ECF Nos. 588-9, 588-9.  Other attorneys list hours for filing tasks, conferring with secretaries, and other non-legal work.  *E.g.*, ECF No. 580-5 at 31; ECF No. 580-11 at 9; ECF No. 580-18 at 4, 14–15.  Although these activities were undoubtedly necessary to counsel's successful litigation of the case, that does not render them legal or paralegal work.  The Court will therefore eliminate from the lodestar hours related to processing and filing consent paperwork and updating and organizing files and lists, in the amount of 46.8 hours for Mr. Griffith (law clerk), 42.2 hours for Mr. Griffith (attorney),[17] 6.9 hours for Mr. Conger (1.5 in 2017–2018 and 5.4 in 2019–2020), 2.5 hours for Ms. Weinstein, 0.8 hours for Ms. Smith in 2018,[18] 0.8

---

[17] The Court disagrees with Ms. Vinaccia's inclusion of the entry of 2.1 hours for "Finalize and file Initial Disclosures, ENE statement, Discovery Plan" on 6/28/2018 as clerical, as the entry suggests review of these documents necessitated some legal work.  *See* ECF No. 588-9 at 44.  Additionally, the Court agrees with Ms. Vinaccia's recommendation to account for clerical tasks in Mr. Griffith's block-billed entries by reducing the hours by 15%.  *See Huhmann*, 2015 WL 6127198, at *8 (noting discretion to decrease hours by a percentage when non-recoverable activities are included in block-billed entry with recoverable activities).

[18] The Court declines to eliminate the entry on 6/27/2018 for "Final review after edits made and instruct secretary re filing," as a portion of this 0.2 hours was spent on legal review.

1    hours for Mr. Naduris-Weissman, and all hours for Ms. Messner.

2        **Travel time**

3        The City also argues that travel time billed by Mr. Naduris-Weissman and Ms.

4    Weinstein from Pasadena to San Diego is not properly included in the lodestar

5    calculation.[19]  Plaintiffs counter that Mr. Naduris-Weissman and Ms. Weinstein otherwise

6    worked on the case during their travel time, as they traveled by train, and that the rare

7    instance in which they traveled by car is nonetheless recoverable.

8        The prevailing party's attorney travel time is generally compensable when the

9    travel expenses are reasonable and would ordinarily be billed to fee-paying clients.  *See*

10   *Lemus v. Burnham Painting & Drywall Corp.*, 426 F. App'x 543, 546 (9th Cir. 2011)

11   (citing *Chalmers v. City of L.A.*, 796 F.2d 1205, 1216 n. 7 (9th Cir.1986)); *Lewis v. Cty.*

12   *of San Diego*, No. 13-CV-02818-H-JMA, 2017 WL 6326972, at *8 (S.D. Cal. Dec. 11,

13   2017), *aff'd*, 798 F. App'x 58 (9th Cir. 2019).  Plaintiffs argue that the *Arellano*

14   plaintiffs' retention of a Los Angeles-based law firm was reasonable because of the pre-

15   existing relationship between the *Arellano* plaintiffs' labor union and the law firm.  The

16   Court finds that Rothner, Segall & Greenstone's considerable experience representing

17   San Diego labor unions and its longstanding relationship with San Diego municipal

18   employees renders it reasonable that the *Arellano* plaintiffs would retain them for this

19   lawsuit.

20       Although the Ninth Circuit has in the past countenanced a reduction of attorney's

21   hours for travel time, *see In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d

22   1291, 1298 (9th Cir. 1994) (finding no abuse of discretion when district court reduced

23   hours spent on travel by 50%), the Court finds the City has not established a reduction

24

25

26   [19] The City also argues that billing for both Mr. Naduris-Weissman and Ms. Weinstein's travel time is
     duplicative.  As the Court found above, the attendance of both attorneys at court conferences and

27   meetings with opposing counsel was reasonably necessary.

28                                                                                    17-cv-1464-GPC-BGS

should apply here.  The timesheet entries for Mr. Naduris-Weissman and Ms. Weinstein indicate that at least some of the travel time from Pasadena to San Diego was spent on other compensable activities, including preparing for hearings.  *E.g.*, ECF No. 580-18 at 20.  This bolsters the reasonableness of Plaintiffs' claimed hours relating to attorney travel, and the Court therefore declines to reduce the hours attributed to travel time.

**Office conferences**

The City also opposes 5.3 hours billed by Mr. Griffith, 1.4 hours by Ms. Weinstein, and 0.3 Mr. Lee for office conferences with Ms. Smith and Mr. Naduris-Weissman, for which the City states the senior attorneys have already billed.

"Time billed for internal conferencing is recoverable to the extent it is reasonably necessary to conducting the litigation."  *Cruz v. Alhambra Sch. Dist.*, 601 F. Supp. 2d 1183, 1192 (C.D. Cal. 2009); *see also Saldana-Neily v. Taco Bell of America, Inc.*, No. C04-04571 MJJ, 2008 WL 793872, at *10 (N.D. Cal. Mar. 24, 2008) (noting that some team meetings or discussion are necessary and it is not unreasonable for an attorney to review the work of another attorney where a filing is important or complex).  However, "the law does not require the district court to compensate for all the time [plaintiff's] counsel spent conferring among themselves."  *Terry v. City of San Diego*, 583 Fed. App'x 786, 791 (9th Cir.2014) (citing *Gonzalez*, 729 F.3d at 1203 and *Horsford v. Bd. of Trustees of Cal. State Univ.*, 132 Cal.App.4th 359, 673, 33 Cal.Rptr.3d 644 (2005)). Courts generally require that the attorneys present detailed explanations of why such internal meetings were necessary. *See Davis*, 976 F.2d at 1545; *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007) (given the "failure to provide a persuasive justification for the intra-office meetings, the district court did not err in finding the intra-office conferences to be unnecessary and duplicative").  Additionally, it is not reasonable to double- or triple-bill a client for internal meetings, including meetings between partners and associates regarding assignments.  *See Munoz v. California Bus. Bureau,*

1    *Inc.*, No. 1:15-CV-1345-BAM, 2017 WL 3009210, at *5 (E.D. Cal. July 14, 2017).

2        Here, the Court agrees with the City that some of the hours billed by Mr. Griffith

3    and Ms. Weinstein appear to already be represented in Ms. Smith and Mr. Naduris-

4    Weissman's timesheets.[20]  *See* ECF No. 580-15 at 9 (duplicative of Smith timesheet

5    entry, ECF No. 580-11 at 4); ECF No. 580-18 at 14.  Although the Court does not find

6    that the intra-office conferences were unnecessary, the Court finds it unreasonable to

7    permit Plaintiffs to double-bill defendant for these meetings.  Accordingly, the Court will

8    reduce Mr. Griffith's time by 1.6 hours (0.5 as a clerk and 1.1 as an attorney) and Ms.

9    Weinstein's time by 1.1 hours to account for the fact that Plaintiffs are already being

10   compensated for these meetings at Ms. Smith's and Mr. Naduris-Weissman's rates.[21]

### i.  Merits Lodestar Calculation

| Case | Name | Hourly rate (per year) | | Hours | Amount |
|------|------|------|------|------|------|
| *Kries* | Michael Conger | $600 | 2017–2018 | 349.8 | $209,880.00 |
| | | $650 | 2019–2020 | 494.2 | $321,230.00 |
| *Kries* | Patti Messner | $95 | | 0 | 0 |
| *Mitchell* | Ann Smith | $600 | 2017–2018 | 321.5 | $192,900.00 |
| | | $650 | 2019–2020 | 348.4 | $226,460.00 |
| *Mitchell* | Dyland Griffith | $175 | 2017 (law clerk) | 86.3 | $15,102.50 |
| | | $225 | 2017–2020 | 826.2 | $185,895.00 |
| *Arellano* | Eli Naduris-Weissman | $500 | | 199 | $99,500.00 |
| *Arellano* | Hannah Weinstein | $400 | | 446.1 | $178,440.00 |
| *Arellano* | Juhyung Harold Lee | $295 | | 30.6 | $9,027.00 |
| *Arellano* | Law clerks | $150 | | 29.7 | $4,455.00 |

[20] The Court will not exclude office conferences listed by the junior attorneys that are not included in the senior attorneys' timesheets.  *E.g.*, ECF No. 580-15 at 10 (listing office conference with Ms. Smith on 11/30/2017); ECF No. 580-11 at 4 (not including office conference on 11/30/2017); ECF No. 580-18 at 18 (entry by Mr. Lee for office conference Ms. Weinstein on 11/29/2018, but no entry on same day for conference by Ms. Weinstein).

[21] The City also contends that Plaintiffs included hours for reviewing and leaving voicemails and that such tasks are not compensable, but does not request that the Court reduce the lodestar calculation on this basis.  Because these hours likely represent counsel's time spent listening to and responding to Plaintiffs' questions about the case, the Court does not find them clearly unreasonable.

29

The Court accordingly calculates the lodestar, excluding hours expended on the instant motion, to amount to $531,110.00 for the *Kries* Plaintiffs, $620,357.50 for the *Mitchell* Plaintiffs, and $291,422.00 for the *Arellano* Plaintiffs.

## B. Post-Lodestar Adjustment

Although both Plaintiffs and the City spend significant portions of their briefing discussing the alleged complexity (or lack thereof) of the case, neither appear to request a post-lodestar adjustment to the fee award. In any case, the Court finds any adjustment of the lodestar calculation inappropriate in this case. The litigation was neither exceedingly complex nor simple, as the parties respectively contend. The case presents no unusual circumstances meriting a departure from the lodestar amount. Thus, as the lodestar calculation is reasonable, the Court will not adjust the lodestar calculation.

## C. Fees-on-Fees

Based on the Court's calculation, Plaintiffs' time records indicate their attorneys spent the following hours working on the instant fee motion, reply brief, and objection to evidence:

| Case | Name | Hours expended (by year) | |
|------|------|------|------|
| *Kries* | Michael Conger | 62.6 | 2019–2020 |
| *Mitchell* | Ann Smith | 16.7[22] | 2019–2020 |
| *Mitchell* | Dyland Griffith | 39.4 | 2019–2020 |
| *Arellano* | Eli Naduris-Weissman | 54.6[23] | |
| *Arellano* | Hannah Weinstein | 62.3 | |

In their sur-reply, the City objects to the approximately 140 hours Plaintiffs expended on their reply brief as excessive, noting that Plaintiffs introduced significant

---

[22] The Court has subtracted one hour from Ms. Smith's claimed hours that was anticipated to be spent at the motion hearing that did not occur.

[23] As for Ms. Smith, the Court has subtracted one anticipated hour from Mr. Naduris-Weinstein's hours.

17-cv-1464-GPC-BGS

new evidence on reply that Plaintiffs contend was impermissible.  The City does not point to any particular timesheet entries to support its claim that the award should be reduced by 50% after accounting for the City's suggested rates.  ECF No. 596 at 8.

"Fees-on-fees"—or fees for work on a motion for attorney's fees—are typically recoverable, including for a reply brief.  *See Thompson v. Gomez*, 45 F.3d 1365, 1367 (9th Cir. 1995); *Kailikole v. Palomar Cmty. Coll. Dist.*, No. 18-CV-02877-AJB-MSB, 2020 WL 6203097, at *5 (S.D. Cal. Oct. 22, 2020).  However, in evaluating a request for "fees on fees," a district court can apply the same percentage of merits fees ultimately recovered to determine the proper amount of the fees-on-fees award.  *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 909 (9th Cir. 1995); *Thompson*, 45 F.3d at 1367–68 (affirming district court award of only 87.2% of fees-on-fees given that plaintiffs had only been awarded 87.2% of the fees requested in the original 'merits' fee application); *Nat.-Immunogenics Corp. v. Newport Trial Grp.*, No. SACV1502034JVSJCGX, 2016 WL 11520758, at *5 (C.D. Cal. Oct. 25, 2016) (awarding party 16.4% of requested fees-on-fees in light of 16.4% recovery of requested merits fees).

The Court finds the percentage reduction approach appropriate here.  Because the Court determined that *Kries* Plaintiffs were entitled to 84.9%, *Mitchell* Plaintiffs to 86.4%, and *Arellano* Plaintiffs to 97.3% of their requested fees excluding fees requested for the fee motion, the Court will grant Plaintiffs a corresponding percentage of their requested fees for the fee application.[24]  The Court calculates that Plaintiffs are entitled to a fees-on-fees amount of $34,545.81 for the *Kries* Plaintiffs, $21,293.28 for the *Mitchell*

---

[24] When calculating the total 'merits' fees requested, the Court relied upon the amount requested in the initial fee motion minus the amount billed for the motion itself (calculated with the attorneys' requested rates), resulting in an initial request of $625,590 for the *Kries* Plaintiffs, $717,747.50 for the *Mitchell* legal team, and $299,545 for the *Arellano* legal team, for a total of $1,642,882.50 excluding fees-on-fees.  The Court ultimately calculated the lodestar for *Kries* Plaintiffs to be $531,110, or 84.9% of the fees sought; the lodestar for *Mitchell* Plaintiffs to be $620,357.50, or 86.4% of the fees sought; and the lodestar for *Arellano* Plaintiffs to be $291,422.00, or 97.3% of the fees sought.

Plaintiffs, and $50,810.06 for the *Arellano* Plaintiffs, taking into account each legal team's degree of success on the merits fees.

## IV.    Conclusion

The Court **GRANTS in part** and **DENIES in part** the motion for attorney's fees. The Court awards the *Kries* Plaintiffs $565,655.81 in attorney's fees and $5,976.20 in costs, the *Mitchell* Plaintiffs $641,650.78 in attorney's fees and $10,856.45 in costs, and the *Arellano* Plaintiffs $342,232.06 in attorney's fees and $5,942.62 in costs.

**IT IS SO ORDERED.**

Dated: January 13, 2021

Hon. Gonzalo P. Curiel
United States District Judge

17-cv-1464-GPC-BGS